**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **GREGORY L. SCOTT** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO.:  2:06-cv-654-MEF |
| | ) | |
| **NORMENTSECURITY GROUP** | ) | JUDGE MARKUSZESKI E. FULLER |
| | ) | |
| Defendant. | ) | |

**NOTICE TO THE COURT AND
MOTION FOR ENFORCEMENT OF SETTLEMENT
OR, ALTERNATIVELY, TO DISMISS**

COMES NOW the Defendant, Norment Security Group, Inc. and advises the Court that it settled the Plaintiff's claim against it but that it is now advised by the Plaintiff's attorney, Braxton Schell, Jr., that the Plaintiff has backed out of the settlement.

**I.   The following details the events leading up to this state of affairs:**

A.   The Plaintiff's deposition was set for June 19, 2007. The parties had found it difficult to find an agreeable date. This left the Defendant with a very short time to complete its dispositive motion after the Plaintiff's deposition.

B.   The attorneys for the parties engaged in settlement discussions culminating on June 18, 2007, the day before the Plaintiff's deposition. The Plaintiff had offered to settle for $15,000. The Defendant counter-offered $10,000, conditioned on a complete and confidential settlement and release. The Defendant is advised that the counsel for the plaintiff contacted Plaintiff and secured his consent to make a counteroffer of $12,500.00. Defendant's counsel secured Defendant's consent to this counterproposal. Defendant's counsel conveyed that agreement to Plaintiff's counsel along with the stipulation that confidentiality would be enforced by liquidated damages of half the settlement amount. The Defendant received an email communication from Plaintiff's counsel just after noon on June 18, 2007 as follows: "Bruce, This will confirm our settlement for $12,500, with all the usual conditions." The email requested

1

that Defendant's counsel draft and forward a settlement and release to Plaintiff's counsel. Defendant's counsel replied to the email from Plaintiff's counsel the same day at 1:30 pm, confirming the settlement and the agreement for liquidated damages for any breach of confidentiality. Based on the settlement, the plaintiff's deposition, along with the others, was mutually cancelled.

        C. On Thursday, June 21, 2007, Defendant's counsel received the following email from Plaintiff's counsel:

> "Bruce – Just a quick heads up. Scott is waffling on the settlement-I told him if he reneged I would withdraw and either the judge would enforce it, or he'd have to find new counsel and try to get [Judge] Fuller to waive deadlines, which is unlikely. I think it will work out, and I'm out of the country next week, back in the office on July 2. Go ahead and prepare release, but don't send check yet and I'll call you when I get back."

On that same day, Defendant's counsel sent the settlement agreement to the Plaintiff's counsel [Attachment 1].

        D. On July 2, 2007, Plaintiff's counsel sent the Defendant's counsel a facsimile copy of a letter confirming that Mr. Scott would no longer go along with the agreed settlement and wanted "to back out." Mr. Schell's letter of July 2, 2007 to this effect is attached [Attachment 2].

**II.    The case has been settled. The agreement is fair to the Plaintiff and should be enforced. The Defendant agreed to settle on a cost-of-defense basis because the Plaintiff's claims of racial discrimination and retaliation are very weak:**

        A. Plaintiff was a probationary employee who had problems with attendance and compliance with safety rules.

        B. He was terminated after incurring, in less than three months, all but one of the *annual* attendance points allowed under Defendant's attendance system.

        C. He was terminated after an absence of two days during which he did not call his supervisor as required.

        D. He was terminated by the same person who hired him less than three months before with knowledge of his race which gives the defendant the "same actor" presumption against discriminatory motive.

E. He will not be able to provide any similarly-situated white employee who received more advantageous treatment from his supervisor.

F. He was in a department that contained an approximately-equal number of white and African American employees.

G. His retaliation claim is based on a contention that the Defendant enforced its plant-wide safety rules more stringently against minorities, in essence a claim that the defendant cared less whether its white employees were injured.

H. He has very little claim for actual damages because he secured a higher-paying position after his discharge.

**III. The Defendant has been highly prejudiced by the Plaintiff's action in backing out of the agreed-upon settlement. Plaintiff's deposition was cancelled in consideration of his willingness to settle and Plaintiff backed out of the settlement when it was too late for the Defendant to depose him and prepare a dispositive motion.**

**IV. The Defendant stands ready to pay the settlement sums as the Court may direct.**

WHEREFORE, the Defendant asks that the settlement be enforced with the Plaintiff required to live up to the terms of the settlement agreement. In the alternative, the Defendant asks that the Plaintiff's claims be dismissed because his actions violated his obligation to provide discovery and that the Court grant the Defendant whatever other or additional relief the Court may find appropriate, including assessing costs for this Report and Motion against the Plaintiff.

Respectfully submitted,

s/Bruce J. Downey III
**BRUCE J. DOWNEY III**
*ATTORNEY FOR DEFENDANTS*

**OF COUNSEL:**
CAPELL & HOWARD, P. C.
150 South Perry Street
Post Office Box 2069
Montgomery, Alabama  36104
(334) 241-8000
(334) 323-8888

3

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 3rd day of July, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Braxton Schell, Jr., Esq.<br>
Braxton Schell, Jr., P.C.<br>
1330 - 21st Way S.<br>
Ste. 210<br>
Birmingham, AL 35205

                                        s/Bruce J. Downey III
                                        OF COUNSEL

# Attachment 1

1095295

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GREGORY L. SCOTT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action File No.: |
| | ) |
| NORMENT SECURITY GROUP, INC., | ) |
| | ) |
| Defendant. | ) |

**CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE**

This Settlement Agreement ["Agreement"] is made and entered into by Gregory L. Scott ["Scott" or "Plaintiff"] and his agents, representatives, attorneys, assigns, heirs, executors and administrators (hereinafter individually and collectively referred to as "Releasees"); and Norment Security Group, Inc. ["Norment" or "Defendant"], on behalf of itself, its parents (specifically including Compudyne Corporation), and/or any of its subsidiaries, divisions, affiliates, predecessors, successors, assigns and trustees and any of the stockholders, directors, officers, officials, representatives, insurers, employees and agents of Norment or the other released parties ["Released Parties"].

WHEREAS, Plaintiff and Defendant are presently parties to a lawsuit involving disputed issues of law and fact, such lawsuit now pending before the United States District Court for the Middle District of Alabama, captioned in said court as *Gregory L. Scott v. Norment Security Group, Inc.,* Case No. _____ [the "Lawsuit"]; and

WHEREAS, the parties desire, without any concession or admission of unlawful conduct, liability, fault or wrongdoing, to effect a full, complete, final and binding settlement and compromise of all claims, charges, actions, causes of action or issues that have been raised or could be raised by Plaintiff against Defendant arising out of or in any way related to Plaintiff's

employment with Defendant and/or any other occurrence prior to the effective date of this Agreement, except as expressly excluded below; and

WHEREAS, Plaintiff has agreed to dismiss, waive and forever forego any and all charges, actions, lawsuits, other claims and proceedings of every nature and description, know and unknown, based on, arising from or related to matters that are, have been or might have been in controversy between the parties from the beginning of time through the date of entry of this Agreement, with prejudice, except as expressly excluded below;

NOW, THEREFORE, in consideration of the mutual covenants and promises each party has made to the other as set forth in this Agreement, the parties agree as follows:

**1.      Payments and Other Considerations**

In complete settlement of Plaintiff's claims as set forth in the Lawsuit, and in exchange for the promises and agreements of Plaintiff contained in this Agreement, Defendant agrees to pay the total sum of twelve thousand five hundred ($12,500.00) dollars in a check made payable to Plaintiff's attorney, Braxton Schell, Jr., delivered to Mr. Schell at his office at 1330 21st Way South, Suite 210, Birmingham, Alabama 35205 by U.S. Mail upon receipt by Defendant's counsel of an executed copy of this. The consideration described above is consideration to which Plaintiff would not otherwise be entitled and is being paid in exchange for this Agreement. Plaintiff acknowledges the sufficiency of this settlement sum.

**2.      Waiver and Release of Claims**

Plaintiff releases and forever discharges Defendant, and the other Released Parties from any and all claims made in the Lawsuit and:

> (a) all claims whether known or unknown asserted or unasserted that the Plaintiff now has or ever had arising out of, resulting from, or relating to, directly or indirectly any action, inaction, matter or thing, or event, no matter what, which occurred or failed to occur at any time in the past from the beginning of time through and including the date signed below as well as all claims based on occurrences throughout the date of Plaintiff's execution of this Agreement arising under Title VII of the Civil Rights Act of 1964, as

amended, the National Labor Relations Act, as amended, the Equal Pay Act, the Fair Labor Standards Act, as amended, the Americans with Disabilities Act of 1990, the Rehabilitation Act of 1973, as amended, the Family and Medical Leave Act, 42 U.S.C. § 1981, the Employee Retirement Income Security Act, as amended, and any other Federal, State, or municipal statute, order, regulation, or ordinance, as well as claims arising under common law, including but not limited to any worker's compensation claim, breach of contract (express or implied), intentional interference with contract, intentional infliction of emotional distress, negligence, defamation, violation of public policy, wrongful or retaliatory discharge, tortious interference with contract, and promissory estoppel and/or any other occurrence up to and including the date of this Agreement, whether presently asserted or otherwise, known or unknown; and

(b) any claim that Plaintiff is similarly situated to any other employee of Defendant.

(c) any claim for age discrimination under the Age Discrimination in Employment Act of 1967, as amended, or state law. **Plaintiff specifically asserts that he is not forty years of age or older and that he understands that Defendant is relying upon his assertion to that effect in agreeing to a settlement and release that does not meet the requirements of the Older Workers Benefit Protection Act.**

Plaintiff intends this Agreement to bar to each and every claim, demand, and cause of action described in this section. Specifically excepted from this release is any litigation, lawsuit, EEOC charge, arbitration proceeding and/or administrative proceeding that cannot be waived by law, including claims arising after the date of this Agreement and the right to file a charge with or participate in an investigation conducted by the Equal Employment Opportunity Commission and/or state administrative agency for claims arising after the date of this Agreement.

Plaintiff further acknowledges and agrees that the waiver and release are essential and material terms of this Agreement and that no settlement could have been reached by the parties without these terms. Plaintiff affirms that he understands and acknowledges the significance and consequence of these specific terms and executes them upon advice of counsel of his own choosing.

3.  **Stipulation of Dismissal**

In further consideration for the promises made by Plaintiff as set forth in the release, Plaintiff also agrees that upon execution of this Agreement he will cause to be filed, with Defendant, a joint stipulation of dismissal of the Lawsuit, with prejudice and without assessment of attorneys' fees or costs which are to be borne separately by the parties incurring such fees and costs pursuant to this Agreement. Defendant's obligations under this Agreement are expressly conditioned upon dismissal with prejudice of the Lawsuit.

4.  **Waiver of Future Employment**

Plaintiff waives any claim he may have to reinstatement of employment with Defendant. Further, Plaintiff agrees that he will not in the future seek or accept employment with Defendant.

5.  **Agreement Not To Sue**

Besides waiving and releasing the claims covered by Sections 2 and 3 above, Plaintiff further agrees never to institute any suit, complaint, proceeding, grievance or action of any kind at law, in equity, or otherwise in any court of the United States, state or municipality against Defendant or any of the other Released Parties alleging violations that occurred prior to the date this agreement is executed by the parties. Specifically excepted from this agreement is any litigation, lawsuit, EEOC Charge, arbitration proceeding and/or administrative proceeding, other than the claims of the Lawsuit, filed on or before the date this agreement is executed by the parties or any other claim or right that cannot be waived by law. If Plaintiff sues Defendant or any of the other Released Parties in violation of this Agreement, he shall be liable to those defendants for reasonable attorneys' fees and other litigation costs incurred in defending against such a suit. Further, if Plaintiff sues those defendants in violation of this Agreement, the Defendant can require that Plaintiff return all but $100 of the money paid to Plaintiff pursuant to this Agreement.

6.  **Non-Admission**

This Agreement does not constitute and shall not be interpreted in any respect as an admission of any liability or wrongdoing by Defendant or any other Released Parties, such

liability being explicitly contested and denied. Defendant enters this agreement to *buy its peace*. This Agreement shall not be admissible in any proceeding without the written consent of the parties or unless ordered by a court of competent jurisdiction, except a proceeding instituted by either party alleging a breach of this Agreement.

7.  **Return of Defendant's Documents**

Plaintiff agrees to return and cause his counsel to return all of Defendant's documents, and any copies thereof, produced to him during the Lawsuit or taken by him at any time. Plaintiff agrees to destroy and cause his counsel to destroy any electronic copies of said documents.

8.  **Confidentiality.**

With the exception of any matter relating to the enforcement of this Agreement, Plaintiff covenants that he will keep this Agreement, the negotiations leading to this Agreement, and the terms and conditions of this Agreement **strictly confidential** and, except as he may be required by law, will not review, discuss or disclose, orally or in writing, the negotiations leading to this Agreement, any of the terms or conditions of this Agreement, with any person, organization or entity, other than his attorneys, tax consultants, or immediate family (and to them only after securing their commitment to their own confidentiality), on the condition that disclosure to such persons will be deemed a breach of this Agreement. If inquiries arise concerning Plaintiff's dispute with Defendant or this Agreement by anyone other than those listed, Plaintiff will simply state "the matter has been resolved" and will make no other comment. Plaintiff further covenants that he will not disclose, directly or indirectly, to any current or former employee of Defendant any information relating to this action. Plaintiff understands that his commitment to confidentiality is the single greatest motivation for Defendant's entry into this agreement and that a breach of this paragraph is a material breach of this Agreement. Plaintiff confirms breaches his commitment to confidentiality, Defendant will suffer serious damage and that its damage will be difficult to precisely compute. Therefore, the parties agree that, upon Plaintiff's breach of this provision, in addition to any other remedies available to it, Defendant shall be entitled to liquidated damages from the Plaintiff of $6,250.00 (which is agreed to be a reasonable estimate of those damages and not a penalty) and to any compensation of any type that Plaintiff may

receive from other parties for such breach. If Defendant is required to institute suit to enforce this provision or to collect its damages, it shall be entitled to its attorney's fees and costs.

9.      **Use of the Agreement in Subsequent Proceedings.**

The parties agree that this Agreement may not be used as evidence in any subsequent proceeding of any kind (without the written consent of all parties) except a proceeding regarding a claim alleging a breach of this Agreement.

10.     **Tax Liability.**

If any taxing body determines that any amount would have been withheld from the 1099 payments provided for in paragraph 1, Plaintiff acknowledges and assumes all responsibility for the payment of such taxes and agrees to indemnify and hold the Defendant harmless as to any tax liability arising for its payment of the settlement sum.

11.     **Entire Agreement**

This Agreement shall be construed in accordance with the laws of the State of Alabama. This Agreement sets forth the entire agreement between the parties and supersedes any written or oral understanding, promise, or agreement directly or indirectly related to, which is not referred to and incorporated in this Agreement. No other promises or agreements shall be binding unless made in writing and signed by Plaintiff and Defendant.

12.     **Full Knowledge, Consent, And Voluntary Signing**

Plaintiff is entering into this Agreement knowingly, voluntarily, and with full knowledge of its significance; he has not been coerced, threatened, or intimidated into signing this Agreement; and he has consulted with an attorney of his own choosing, before signing it.

13.     **Severability**

To the extent that a court of competent jurisdiction holds that any portion of this Agreement is invalid or legally unenforceable, the remaining portions shall not be affected and shall be given full force and effect.

14. **Counterparts**

      This Agreement will be executed in two counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

| GREGORY L. SCOTT | NORMENT SECURITY GROUP, INC. |
|---|---|
| _____ | _____ |
| **Plaintiff** | **Defendant** |
| Date: _____ | Date: _____ |

**AS WITNESS AND AS TO FORM:**

_____
**BRAXTON SCHELL, JR.**
**ATTORNEY FOR SCOTT**

Date: _____

# Attachment 2

1095295

**BRAXTON SCHELL, JR., P.C.**
ATTORNEY AT LAW
1330 21st Way South
Suite 210
Birmingham, Alabama 35205
(205) 933-8512
(205) 933-1345 - fax

email address: wbschell@bellsouth.net

July 2, 2007

**VIA FACSIMILE**

Bruce J. Downey, III
Capell & Howard
P. O. Box 2069
Montgomery, Alabama 36102-2069

Re:  Gregory Scott v. Norment Security

Dear Bruce:

    This will confirm our conversation to the effect that Mr. Scott has now told me that he wants to back out of our agreed settlement of $12,500.00. Please file whatever you think is appropriate with the Court.

Very truly yours,

Braxton Schell, Jr.

BS,Jr./amw

cc:  Gregory Scott